Honorable Leif B. Erickson
Federal Magistrate Judge
Missoula Division
Russell E. Smith Courthouse
201 East Broadway, Room 370
Missoula, MT  59802

```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MONTANA
                   MISSOULA DIVISION
    _____
```

WANDA BOGGESS,

                                                CAUSE NO. CV 05-80-M-LBE

        Plaintiff,

  vs.

                                                FINDINGS AND
                                                RECOMMENDATION OF
                                                U.S. MAGISTRATE JUDGE

JO ANNE BARNHART,
Commissioner of Social Security,

        Defendant.
_____

    Claimant brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision by the Commissioner of Social Security (Commissioner) awarding her only a closed period of disability insurance and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act (Act).

    Both parties have moved for summary judgment. For the reasons stated below, the Court enters the following:

## RECOMMENDATION

    **IT IS RECOMMENDED** that the Claimant's Motion for Summary Judgment be **DENIED,** the Commissioner's Motion for Summary Judgment be **GRANTED** and the Commissioner's decision be **AFFIRMED.**

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate upon the parties.

The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE AND DATED this 30th day of May, 2006.

```
                           /s/ Leif B. Erickson
                          Leif B. Erickson
                          United States Magistrate Judge
```

**RATIONALE**

**I.   BACKGROUND**

Claimant brings this action challenging the Commissioner's decision awarding her only a closed period of benefits.  Claimant filed applications for disability insurance benefits and supplemental security income in April 2003, alleging a disability onset date of May 1, 2002.  Tr. 372.  Her applications were denied initially and on reconsideration, and Claimant requested a hearing.  Tr. 36-45, 46.  Following a hearing, an Administrative Law Judge (ALJ) issued a partially favorable decision, finding Claimant was disabled from July 2, 2002 through September 2, 2003, but not thereafter.  Tr. 17-27.  The Appeals Council later denied Claimant's request for review, rendering the ALJ's

decision the agency's final decision for purposes of judicial review.  Tr. 7-9.

## II.  FINDINGS OF THE ALJ

Following the steps in the sequential evaluation process, the ALJ first found that Claimant had not engaged in substantial gainful activity since July 2, 2002, because her earnings as a part-time bus driver fell under the substantial activity level. Tr. 18-19.  At the second step, the ALJ found that Claimant's lumbar and cervical disc disease, status-post anterior cervical discectomy and fusion, and status-post lumbar fusion at L5-S1 constituted severe impairments.  Tr. 26.

At step three in the evaluation process, the ALJ found that the Claimant had no impairment or combination of impairments severe enough to meet or medically equal the criteria of any impairment in the Listing of Impairments.  Tr. 26.  At step four, the ALJ evaluated whether Claimant retained the residual functional capacity to perform her past relevant work.  The ALJ found that, "from July 2, 2002 through September 2, 2003, the claimant would have been unable to perform substantial gainful activity on a sustained basis as a result of her cervical and lumbar disc problems and the time and recovery involved with her care."  Tr. 26.  However, the ALJ further found that "[t]here was significant medical improvement in the claimant's impairments from September 2, 2003, that directly relates to the claimant's

ability to work." Tr. 26.  In light of that improvement, the ALJ concluded that the claimant "could have performed her past relevant work as a surveyor helper, industrial/commercial cleaner, fast food worker, and job coach." Tr. 26.  As a result, the ALJ ultimately found that "[C]laimant was disabled from July 2, 2002, through September 2, 2003, but not thereafter."  Tr. 26.

### III.  CLAIMANT'S ALLEGATIONS OF ERROR

While Claimant does not challenge the ALJ's determination that she was disabled as of July 2, 2002, she argues he erred in concluding that her condition had improved such that she was no longer disabled after September 2, 2003.  Specifically, she claims the ALJ failed to give sufficient weight to a December 2, 2003, Functional Capacity Evaluation (FCE) indicating she was only capable of performing sedentary work on a part-time basis. Claimant also maintains the ALJ failed to cite sufficient reasons for rejecting the opinion of her treating general practitioner, who concurred with the results of the FCE, and erred by instead relying on the pre-FCE opinion of her treating surgeon.

### IV.  STANDARD OF REVIEW

The Court's review of this case is limited.  *Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The Court must affirm the Commissioner's decision denying benefits if it is "supported by substantial evidence, and if the Commissioner applied the correct legal standards."  *Batson*

*v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, (1971), but "less than a preponderance." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

The Court will uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson*, No. 02-35471 at 2815 (*citing Gallant v. Heckler*, 753 F.2d 1450, 1452-53 (9th Cir. 1984). "[I]f evidence exists to support more than one rational interpretation," the Court must defer to the Commissioner's decision." *Id*. (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

**V.   DISCUSSION**

Claimant challenges the ALJ's determination that she was not disabled after September 2, 2003. The ALJ concluded that Claimant's period of disability ended on September 2, 2003, because there had been "significant medical improvement in the claimant's impairments" that related directly to her ability to work. Tr. 26. Claimant disputes this finding, and asserts that the ALJ was wrong to discount the December 2003 FCE and the subsequent opinion by Dr. Autio.

While the claimant typically bears the burden of proving the existence of a disability, a presumption of continuing disability arises once the ALJ finds that the claimant is disabled. *Bellamy*

*v. Secretary of Health and Human Services*, 755 F.2d 1380, 1381 (9th Cir. 1985).  While the claimant retains the ultimate burden of proof, the presumption of continuing disability shifts the burden of production to the Commissioner, who must then produce evidence to rebut that presumption.  The Commissioner may terminate benefits only if substantial evidence demonstrates medical improvement such that the claimant is able to engage in substantial gainful activity.  42 U.S.C. 423(f); 20 C.F.R. § 416.994(b); *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983).

Several Circuit Courts of Appeals have concluded the medical improvement standard outlined above applies to a decision on a claimant's application where the ALJ has found a closed period of disability.  *Shepherd v. Apfel*, 184 F.3d 1196, 1198 (10th Cir. 1999); *Waters v. Barnhart*, 276 F.3d 716 , 718-19(5th Cir. 2002); *Chrupcala v. Heckler*, 829 F.2d 1269, 1274 (3d Cir. 1987); *Pickett v. Bowen*, 833 F.2d 288, 292 (11th Cir. 1987).  This Court has not found any Ninth Circuit decisions addressing whether the medical improvement standard applies in closed period cases.  In the absence of controlling Ninth Circuit authority, this Court will follow the lead of those circuits addressing the issue and apply the medical improvement standard outlined in the preceding paragraph to this case.

Having established that the ALJ must produce substantial evidence to overcome the presumption that Claimant remained

disabled after September 2, 2003, the Court will now proceed to address Claimant's allegations of error.

**A.   Functional Capacity Evaluation**

On December 2, 2003, occupational therapist Betsy Hart administered a Functional Capacity Evaluation in which she concluded Claimant was "capable of performing physical work in the sedentary physical demand level, but not on a full-time basis."  Tr. 325.  Claimant argues the ALJ should have adopted that assessment, and erred by instead finding that by September 2, 2003, her condition had improved to the point where she was capable of performing a full range of medium work.  Tr. 26.  Specifically, Claimant alleges that the ALJ mischaracterized the statements she made to the occupational therapist, and erred by discounting the results of the FCE based on earlier medical opinions.

The ALJ discussed the FCE in his written decision, but assigned it little weight for several reasons.  Tr. 20.  First, the ALJ noted that "the occupational therapist recommended only 2-4 hours of sedentary work per day" despite the fact that Claimant herself "described doing light physical activities up to 6 hours a day" and reported that her doctor had "restricted her to work not requiring lifting greater than 50 pounds, [with] no bending or stooping at the waist and no twisting."  Tr. 20.  Because "even the [C]laimant described [having] greater

functional abilities" than those set forth in the FCE, the ALJ assigned little weight to the occupational therapist's opinion. Tr. 20.

Claimant argues this was not a legitimate reason for discounting the FCE because the ALJ mischaracterized her statements to the occupational therapist. As Claimant notes, she "reported to the examiner that she was driving [a] bus one hour in the morning and one hour in the afternoon, and doing limited housekeeping with a necessity to lay on her couch to relieve her symptoms." Cl.'s Br. in Support, 6 (August 26, 2005); Tr. 324. Claimant thus argues that the limitations she reported were consistent with the occupational therapist's conclusion that she could perform sedentary work for only two to four hours per day.

As the ALJ noted, however, Claimant also reported to the occupational therapist that she engaged in "light physical activities up to 6 hours a day." Tr. 20. Specifically, Claimant indicated to the examiner that "that she feels she is active with a light activity level of up to six hours total per day, and no greater than two hours at any one time." Tr. 324. Although the ALJ failed to reference Claimant's statement that she only engaged in light activity two hours at a time, the fact remains that the occupational therapist limited Claimant to a total of two to four hours of sedentary work per day, despite the fact that Claimant reported engaging in light activity a total of up

to six hours per day.  The ALJ properly noted that the
occupational therapist found Claimant capable of engaging in
fewer total hours of light activity than she reported doing on a
daily basis.  Nevertheless, such a minor discrepancy would not,
by itself, be a sufficient basis for disregarding FCE in its
entirety.  As discussed below, however, the ALJ cited additional
reasons for giving little weight to the occupational therapist's
report.

    For example, the ALJ also declined to give substantial
weight to the FCE because it was "based primarily on the
[C]laimant's own subjective account of her limitations and pain."
Tr. 20.  The ALJ found that Claimant's subjective allegations
were not entirely credible, "to the extent that she alleged
continued disability subsequent to September 2, 2003."  Tr. 26.
Claimant does not challenge this finding on appeal, and does not
argue that the ALJ's credibility analysis was legally deficient.
Having found Claimant's allegations of disabling pain and
limitations not entirely credible, the ALJ was entitled to reject
the occupational therapist's opinion to the extent it rested on
those subjective complaints.

    Finally, the ALJ gave little weight to the FCE because he
found it was "inconsistent with the bulk of the evidence,"
including the opinions of her various treating physicians.  As
the ALJ noted, for example, Dr. Lar Autio began treating Claimant

for neck and back pain in July 2003, and released her to return to work on September 2, 2003.  Tr. 307.  Claimant's treating neurosurgeon, Dr. Brewington, likewise concluded that Claimant was fit to return to work in September 2003.  Dr. Brewington stated that "[h]er limitations [were] no lifting more than 50-60 pounds and to minimize stooping, bending and twisting at the waist."  Tr. 20; 360.  Finally, as the ALJ also observed, Claimant's treating neurologist, Dr. Young, found in November 2003 that there were minimal objective abnormalities to support her various complaints, such as poor balance.  Tr. 20; 322.  In light of such evidence, the ALJ gave little weight to the FCE, choosing instead to accord more weight "to the reports of her treating and attending medical sources who described considerably greater functional abilities and whose reports were supported by objective medical evidence."  Tr. 20.  It is the ALJ's job to resolve such evidentiary conflicts, and this Court cannot say that the ALJ erred by deciding to credit the opinions of Claimant's treating physicians over a conflicting FCE report.

    Claimant nevertheless suggests that the ALJ should not have adopted Dr. Brewington's September 2003, opinion because it pre-dated the FCE.  Claimant points to a November 24, 2003, letter in which Dr. Brewington advised Claimant's attorney that her ability to work would be dependent on the results of an FCE.  Tr. 308.  The results of the FCE that was conducted just days later

conflicted in many respects with Dr. Brewington's previous treatment notes and conclusions.  Although Claimant suggests that Dr. Brewington would have deferred to and adopted the results of the FCE, there is no indication that he ever even reviewed, much less adopted, those findings. Rather, the record before this Court simply contains conflicting evidence as to Claimant's physical capabilities.  The ALJ properly resolved that conflict, choosing to credit the opinion of Claimant's treating physicians over that of the FCE examiner.

**B.  Treating Physicians**

Claimant also argues the ALJ improperly discounted the opinion of Dr. Autio, who wrote a brief letter in March 2004, indicating he had reviewed the FCE and "agree[d] with its conclusions."  Tr. 370.  The ALJ discussed this letter, rejecting it in large part because Dr. Autio's statement that he agreed with the FCE was inconsistent with his earlier opinion as well as opinions of other medical sources.  Tr. 23.  "In discounting the controverted opinion of a treating physician the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  To do so the ALJ must set forth a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."

*Magallanes v. Bowen*, 881 F.2d 747, (9th Cir. 1989).

Here, the ALJ did a thorough job setting forth specific and legitimate reasons for discounting Dr. Autio's letter opinion and these reasons are supported by substantial evidence in the record.  First, the ALJ placed greater weight on Dr. Brewington's contradictory opinion because of his "greater expertise as a neurosurgeon to evaluate [Claimant's] spinal disorders and because he was the neurosurgeon who performed both the [C]laimant's cervical and lumbar spine surgeries."  Tr. 23.  The ALJ reasoned that Dr. Autio, on the other hand, was "a family practitioner who ha[d] provided routine outpatient care on an intermittent basis" for less than a year.  Tr. 23.  An ALJ may give greater weight to the opinion of a specialist over that of a general practitioner.  *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (citing 20 C.F.R. § 416.927(d)(5)).

In addition to citing Dr. Brewington's greater expertise, the ALJ identified several other reasons for giving Dr. Autio's post-FCE opinion little weight.  For example, the ALJ noted that Dr. Autio simply stated that he agreed with the FCE, which the ALJ had determined was entitled to little weight.  As explained above, the ALJ properly discounted the FCE as "not reflective of the claimant's maximum residual functional capacity" because its findings contradicted the majority of objective medical findings.  The ALJ properly discounted Dr. Autio's letter opinion on the

basis that the FCE upon which it was based was not entitled to significant weight.

Moreover, the ALJ observed that Dr. Autio relied extensively on Claimant's subjective complaints as opposed to objective medical evidence.  Tr. 23.  As noted above, Claimant does not challenge the ALJ's credibility assessment.  It was thus proper for the ALJ to reject Dr. Autio's post-FCE opinion in part because it was based on Claimant's subjective complaints.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ found "[I]t was significant that Dr. Autio's medical notes from the period after September 2, 2003, did not provide objective medical evidence that she was as severely limited as alleged."  Tr. 23.  This is a fair characterization of the record, particularly where Dr. Autio himself released Claimant to return to work in September 2003.  This Court thus concludes that the ALJ cited sufficiently  specific and legitimate reasons for giving Dr. Autio's letter opinion little weight, and those reasons were supported by substantial evidence.

### VI.  CONCLUSION

In sum, this Court concludes that the ALJ did not err by crediting the opinions of his treating physicians over that of the FCE examiner.  The medical evidence of record supports the ALJ's determination that Claimant's condition had improved by September 2003, and the Commissioner thus met her burden of

producing sufficient evidence in this case to rebut the presumption of continuing disability.